UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.

RYAN LALONE,

               Defendant.

_____/

No. 1:23-cr-

HON.
United States District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Ryan Lalone and the United States Attorney's Office for the Western District of Michigan.   The terms of the agreement are as follows:

1.     <u>Plea to an Information.</u>     The defendant agrees to plead guilty to Count 1 of an Information.   Count 1 of the Information charges the defendant with conspiracy to violate the Clean Air Act in violation of Title 18, United States Code, Section 371.   The defendant waives his right to indictment by a grand jury.

2.     <u>The Defendant Understands the Crime.</u>     In order for the defendant to be guilty of violating Title 18, United States Code, Section 371, the following must be true:

     a.     First, two or more persons conspired, or agreed, to commit the crime of falsifying, tampering with, or rending inaccurate monitoring devices and methods, in violation of the Clean Air Act, Title 42, United States Code, Section 7413.

     b.     Second, the defendant knowingly and voluntarily joined the conspiracy.

     c.     Third, a member of the conspiracy did at least one of the overt acts described in the Information for the purpose of advancing or helping the conspiracy.

The defendant is pleading guilty because the defendant is guilty of the charge described above.

3.     <u>The Defendant Understands the Penalties.</u>    The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is the following:

      a.     not more than five years in prison;

      b.     not more than three years of supervised release;

      c.     a fine of not more than $250,000, or twice the pecuniary gain from the offense, or twice the pecuniary loss to a person other than the defendant, whichever is greater; and

      d.     a $100 mandatory special assessment.

The defendant agrees to pay the special assessment at or before the time of sentencing unless the defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4.     <u>Supervised Release Defined.</u>    Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements. The defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum stated above.

5.     <u>Financial Disclosure Statement and Cooperation in Continuing Financial Investigation.</u>

      a.     The defendant agrees to cooperate fully in the investigation of the amount of the fine; the identification of funds and assets in which he has any legal or equitable interest to

be applied toward the fine; and the prompt payment of the fine. The defendant also agrees that the full fine amount shall be considered due and payable immediately. The defendant understands that if the Court imposes a schedule of payments, that schedule is merely the defendant's minimum obligation and neither the only method, nor a limitation on the remedies, available to the United States to enforce the judgment.

   b. The defendant's cooperation obligations include: (A) making payments to the Clerk for the upcoming fine as early as possible; (B) entering into an asset preservation agreement and/or payment plan with the government to preserve assets for payment of a fine and/or facilitate payment of a fine; (C) fully and truthfully completing the Department of Justice's Financial Statement of Debtor form, and any addenda to said form deemed necessary by the United States, within ten days of the change of plea hearing and providing it to both the U.S. Attorney's Office and the U.S. Probation Office; (D) providing any documentation within his possession or control requested by the government regarding his financial condition; (E) authorizing the United States to file notice of Lis Pendens prior to judgment on any real property defendant owns either individually or jointly; (F) submitting to a financial deposition or interview (should the United States deem it necessary) prior to sentencing regarding the subject matter of said form (including making his financial advisor or accountant available for said financial deposition or interview); (G) fully and truthfully answering all questions regarding his past and present financial condition in such interview; and (H) providing a waiver allowing the U.S. Attorney's Office to access his credit report as well as a waiver for the past seven years of tax information held by the Internal Revenue Service.

c.     The defendant agrees that the defendant will not sell, hide, waste, encumber, destroy, or otherwise devalue any such asset worth more than $10,000 before sentencing, without the prior approval of the United States, excluding attorneys' fees incurred in connection with this criminal case.

d.     The defendant authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office, and to share any information collected pursuant to this agreement with the U.S. Probation Office or the Court.

e.     The defendant and the U.S. Attorney's Office agree that information provided by the defendant with respect to a criminal fine will be used to collect assets to satisfy the defendant's fine but it will not be used to otherwise enhance the defendant's sentence, in accordance with United States Sentencing Guidelines ("Guidelines") § 1B1.8.  However, it is expressly understood that such information may be used by the government at sentencing to seek enhancement of the defendant's sentence if the government learns of information about the defendant's assets that is contradicted by the information provided by the defendant in accordance with the defendant's obligations under this paragraph.

f.     The defendant agrees that failure to comply with any of the provisions in subparagraphs a through e above constitutes a material breach of the Plea Agreement.

6.     <u>Factual Basis of Guilt.</u>     The defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing, and which does not include all of the facts underlying the defendant's guilt:

a.     Between approximately 2012 and at least November 2018, Diesel Freak LLC, Ryan Lalone, and Wade Lalone conspired with others, including but not limited to Jess

4

Sisson, Dustin Rhine, Accurate Truck Service, LLC, Griffin Transportation, Inc., Craig Scholten, Ryan Bos, Douglas Larsen, Robert Swainston, Randy Clelland, Scott DeKock, and Glenn Hoezee, to violate the Clean Air Act.   The conspirators violated the Clean Air Act by falsifying, tampering with, rendering inaccurate, deleting, modifying, and removing software and hardware components from the emissions monitoring systems in heavy-duty diesel engines ("HDDEs") and vehicles that were required under the Clean Air Act.

b.      Tampering with or removing the software or hardware of emissions components is sometimes referred to as "deletion," that is, "deleting" the emissions control components and monitoring devices from the vehicle.   Reprogramming the on-board diagnostic ("OBD") system and/or engine control module ("ECM") as part of the emissions control deletion can be referred to as "tuning" the vehicle.   These modifications may be undertaken for the purposes of increasing real or perceived performance and fuel efficiency of the vehicles, and of reducing or eliminating the cost and burden associated with maintaining the vehicles.

c.      Diesel Freak LLC is a company headquartered in Gaylord, Michigan. Diesel Freak LLC conducted remote engine reprogramming, or tuning of OBDs, including deletions, in the Western District of Michigan and elsewhere, including for Accurate Truck Service, LLC.   Ryan Lalone owns and operates Diesel Freak LLC.   Wade Lalone, Jess Sisson, and Dustin Rhine were employed as programmers at Diesel Freak LLC.   All of these defendants were personally involved in conducting remote engine reprogramming, or tuning of OBDs, including deletions, in vehicles carrying HDDEs as a part of the conspiracy.

d.      Companies 1 and 2 are software developers and distributors in the deletion industry.   Companies 1 and 2 designated their downstream customers as "masters" and "slaves."

"Masters" were programmers that used the software to reprogram the engine computer for a truck at the shop of a "slave."   The "slaves" completed the hardware component of the deletion and connected the engine computer to the internet for reprogramming, including by using "slave tools" that allowed the computer to be connected to the internet.   "Masters" were encouraged by Companies 1 and 2 to recruit "slaves."   Companies 1 and 2 provided training and support to their downstream customers to help them successfully delete trucks with HDDEs.

   e.  Diesel Freak LLC was a "master" with dozens of "slaves" in the United States, including Accurate Truck Service, LLC, of Grand Rapids, Michigan.   Diesel Freak LLC used Company 1's software and tools to remotely perform the software component of deletions, including at Accurate Truck Service, LLC.

   f.  From at least February 2015 to at least November 2018, Diesel Freak LLC deleted, or aided and abetted the deletion of, at least 362 vehicles.   These deletions were carried out by Ryan Lalone, Wade Lalone, Jess Sisson, and Dustin Rhine, all of whom knew they were deleting the vehicles.   The deletions included a 2011 Freightliner, 2010 14.8-liter Detroit Diesel engine, VIN 1FUJGLDR8BSAZ2553, and a 2013 Kenworth, 2012 15-liter Cummins ISX engine, VIN 1XKAD49XXDJ355780.

   g.  The conspirators concealed from the government and others that they were engaged in the illegal removal of emissions control components.   For example, they would use code words on invoices, like "ECM wiring," to conceal the fact that the work performed was a deletion.

  7.  <u>Cooperation in Criminal Investigations</u>.   The defendant agrees to fully cooperate with the U.S. Environmental Protection Agency, the U.S. Attorney's Office, and any other law

enforcement agency in their investigation of the charges contained in the Information, as well as the investigation of crimes over which they have actual or apparent jurisdiction.   The defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning the defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in the defendant's possession or under the defendant's control, including, but not limited to, objects, documents, and photographs.   The defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which the defendant should reasonably know will assist in the investigation of other criminal activity.   The defendant will not commit any criminal offense during the course of his cooperation with the United States.   The defendant will submit to polygraph examination(s) upon request.   The defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which the defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

       8.      <u>The United States Attorney's Office's Agrees.</u>

       a.      <u>Acceptance of Responsibility.</u>      The U.S. Attorney's Office agrees not to oppose the defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Guidelines.   However, the U.S. Attorney's Office reserves the right to object to the defendant's request if it subsequently learns of conduct by the

7

defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the U.S. Attorney's Office will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

b.     Non-Prosecution Agreement.   The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against the defendant in the Western District of Michigan arising out of the defendant's violations of the Clean Air Act between 2012 and 2022, provided that the conduct is disclosed to the government by the defendant or his attorney prior to the date of this agreement.   This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

c.     Section 1B1.8 Protection for Proffered/Cooperative Statements.     The U.S. Attorney's Office agrees that information provided by the defendant through the defendant's proffer(s), and any information provided pursuant to the defendant's promise to cooperate as described in this agreement, will not be used by the government to enhance the defendant's sentence, in accordance with Section 1B1.8 of the Guidelines, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer(s).   It is expressly understood, however, that such information may be used by the government at sentencing if the defendant takes a position at sentencing that contradicts information provided by the defendant pursuant to this agreement or any proffer agreement.

d.     Possibility of Sentence Reduction Motions.   The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Section

8

5K1.1 of the Guidelines, 18 U.S.C. § 3553(e), and/or Rule 35(b) of the Federal Rules of Criminal Procedure.   The defendant fully understands that such a motion may be made pursuant to law if, and only if, the defendant fully cooperates with the government and materially and substantially assists the government in the investigation or prosecution of others.   The determinations of whether the defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, and of which type of motion to file, will be made in the sole discretion of the U.S. Attorney's Office.   The defendant fully understands that this paragraph is not a promise by the government to file a motion for departure or to reduce a sentence.   Additionally, the defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion.   Furthermore, if the Court were to grant the motion, the Court—not the government—would decide how much of a departure or sentence reduction the defendant receives based upon the nature and extent of the defendant's assistance.   The defendant acknowledges and agrees that he may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

9.    The Sentencing Guidelines.    The defendant understands that, although the Guidelines are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendant.   The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.   The defendant understands that the defendant and the defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guidelines range and the sentence to be imposed.   The

defendant further understands that the Court shall make the final determination of the Guidelines range that applies in this case, and may impose a sentence within, above, or below the Guidelines range, subject to the statutory maximum penalties described elsewhere in this agreement.   The defendant further understands that disagreement with the Guidelines range or sentence shall not constitute a basis for withdrawal of the plea.

10.     There is No Agreement About the Final Sentencing Guidelines Range.   The defendant and the U.S. Attorney's Office have no agreement as to the applicable Guidelines factors or the appropriate Guidelines range.   Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments, and departures.

11.     Waiver of Constitutional Rights.     By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.   As a result of the defendant's guilty plea, there will be no trial.   At any trial, whether by jury or by the Court, the defendant would have had the following rights:

a.     The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

b.     The right to be presumed innocent and to have the burden of proof placed on the government to prove the defendant guilty beyond a reasonable doubt.

c.     The right to confront and cross-examine witnesses against the defendant.

d.     The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

10

e.    The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

f.    By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment, or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

12.    Waiver of Other Rights.

a.    Appeal and Collateral Attack.

i.    Waiver.  In exchange for the promises made by the government in entering this plea agreement, the defendant waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

ii.    Exceptions.  The defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

A. the defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

B. the defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

C. the guilty plea was involuntary or unknowing; or

11

D. an attorney who represented the defendant during the course of this criminal case provided ineffective assistance of counsel.

   iii.    If the defendant appeals or seeks collateral relief, the defendant may not present any issue in the proceeding other than those described in this subparagraph.

b.    FOIA Requests.    The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

c.    Hyde Waiver.    The defendant acknowledges, by his voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and the defendant hereby disclaims and waives any right to make any claim for attorneys' fees.

13.    The Court is Not a Party to this Agreement.    The defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.    The defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement.    The defendant understands that no one—not the

prosecutor, the defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the defendant will receive, except that it will be within the statutory maximum.

14.    This Agreement is Limited to the Parties.    This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority.   This agreement applies only to crimes committed by the defendant.   This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

15.    Consequences of Breach.    If the defendant breaches any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendant would otherwise be entitled under the terms of this agreement.   In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.   In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.   The defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

16.    This is the Complete Agreement.    This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.   No other promises have been made, nor may any additional agreements,

understandings, or conditions be entered into unless in a writing signed by all parties or on the record in open court.

MARK A. TOTTEN
United States Attorney

4/24/23
Date

JUSTIN M. PRESANT
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

3.31.23
Date

RYAN LALONE
Defendant

I am Ryan Lalone's attorney.  I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

3/31/2023
Date

KEVIN D. COLLINS
Attorney for Defendant

14